IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AUG 1 8 1997

| | |
|---|---|
| EUGENE BROWN, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. CV-95-P-1066-S |
| ) | |
| ALABAMA DEPARTMENT OF ) | |
| CORRECTIONS, OFFICE OF THE ) | |
| COMMISSIONERS, W.E. DONALDSON ) | |
| CORRECTIONAL FACILITY, ) | |
| WARDEN O.J. COOKE, KILBY ) | |
| CORRECTIONAL FACILITY, WARDEN ) | |
| E.L. HARRELSON, WARDEN RON ) | |
| HIGHTOWER, QUESTCARE, INC., ) | |
| DR. GEORGE LYRENE, DR. RICHARD ) | |
| COOKSEY, ) | |
| ) | |
| Defendants. ) | |

ENTERED

AUG 1 9 1997

MEMORANDUM OPINION

On February 7, 1997, the magistrate judge filed his report and recommendation concerning five claims by plaintiff alleging violation of his constitutional rights by several defendants.[1] He recommended that all claims against all Department of Corrections defendants be dismissed with prejudice except plaintiff's claim that defendants Harrelson, Cooke, and Hightower have and are continuing to violate his Eighth Amendment rights to reasonably adequate and nutritious food. The magistrate judge concluded that, due to the scant response of the defendants to that

---

[1] Not included in the report and recommendation was a discussion of plaintiff's claim against Drs. Lyrene and Cooksey for denial of medical care because those defendants were later served and responded to the complaint.

1

particular claim, there were genuine issues of material fact that precluded summary judgment in favor of the defendants.

Defendants Harrelson, Hightower, and Cooke filed their objections to the report and recommendation on February 24, 1997, asserting that they are entitled to qualified immunity because the law is not clearly established that a warden is responsible for assuring that inmates are fed an adequate and nutritious diet when meals at the institution are prepared pursuant to a master menu planned and promulgated on a state-wide basis by the Department of Corrections' Food Service Manager. They argue that, as wardens, they have no control over the menu or particular meal plans prepared for inmates because those are created by the Food Service Manager for the Department of Corrections as a whole.

Also on February 7, 1997, the magistrate judge ordered that defendants Questcare, Inc., Dr. Lyrene, and Dr. Cooksey be served with a copy of the complaint so that they could file a special report responding to it. On March 6, 1997, defendants Lyrene and Cooksey, but apparently not Questcare, filed a motion to consolidate this action with another, CV-96-N-0318-S, and a motion for leave to file a motion to dismiss in lieu of a special report. Because the other case was then already on appeal, the magistrate judge denied the motion to consolidate, and the motion to dismiss is now before the court.

### Objections To Report and Recommendation

Wardens Harrelson, Hightower, and Cooke object to the magistrate judge's report and recommendation that they be denied summary judgment on plaintiff's Eighth Amendment "inadequate diet" claim. They contend that they are entitled to qualified immunity from damages, but make no argument concerning plaintiff's claim for injunctive relief. Although the court agrees that they are shielded from damages by qualified immunity, further hearings will be necessary to determine whether injunctive relief is available to compel them to provide plaintiff with a more nutritious diet.

State officials or agents acting in the exercise of discretionary authority are not liable to pay damages, and are indeed immune from suit under the doctrine of qualified immunity, unless at the time of the acts upon which they are sued, the law was so clearly established that a reasonable official would have understood such conduct to have been illegal. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 72 L.Ed. 2d 396 (1982). As the Eleventh Circuit has described the test:

> Unless a government agent's act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent officer or one who is knowingly violating the law would have done such a thing, the government actor has immunity from suit. See Malley v. Briggs, 475 U.S. 335, 341-43, 106 S.Ct. 1092, 1096-97, 89 L.Ed. 2d 271 (1986).

3

<u>Lassiter v. Alabama A & M University</u>, 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc).

Application of the doctrine of qualified immunity involves a two-step analysis. First, the defendant government official must show that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. If he does so, the burden of proof shifts to the plaintiff to demonstrate that the defendant violated "clearly established constitutional law." Because qualified immunity is measured by an objective standard, not the subject state-of-mind of the defendant, the constitutional law on which a plaintiff relies for relief must be "clearly established" so that any reasonable person could have known of the illegality of the conduct.

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have been developed in such a concrete and factually defined context to make it obvious to all reasonable actors in the defendant's place, that "what he is doing" violates federal law. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987). Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases.

<u>Lassiter v. Alabama A & M University</u>, 28 F.3d 1146, 1149-50 (11th Cir. 1994)(en banc). Stated another way, "if case law, in factual terms, has not staked out a bright line, qualified immunity almost

4

always protects the defendant." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).

> For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about) the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

Lassiter v. Alabama A & M University, 28 F.3d 1146, 1150 (11th Cir. 1994)(en banc).

Despite language in some cases that qualified immunity may shield a government actor from the lawsuit itself, the law is clear that claims for injunctive and declaratory relief are not affected by it. "Qualified immunity applies to monetary damages relief, but not to declaratory and injunctive relief." Fortner v. Thomas, 983 F.2d 1024, 1029 (11th Cir.1993); see also Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995).

Undoubtedly, whether a warden relies on a master menu for assessing the nutritional adequacy of the diets served to inmates is something within the discretionary authority of the warden. Consequently, the burden of proof has shifted to the plaintiff to show that the law was so clearly established that an objectively reasonable warden would know that he is violating an inmate's rights under the Eighth Amendment when the institutional kitchen

serves a diet consistent with a master menu planned by the Food Service Manager of the Department of Corrections even though it lacks coffee, milk, fruit juice, breakfast meat, and fresh fruit and which may be less than 2500 calories per day.[2] Stated another way, would a reasonable warden know from clearly established law that it violates the Eighth Amendment to rely upon a master menu prepared by the Food Service Manager of the DOC to provide a nutritionally adequate diet even though the warden knows it lacks, milk, coffee, fruit juice, fresh or canned fruit, and breakfast meats.

Although it is established beyond question that the Eighth Amendment requires the State and its wardens to provide the basic necessities of life to prisoners, including nutritious food adequate to maintain the inmates' health, <u>Wilson v. Seiter</u>, 501 U.S. 294, 304, 111 S.Ct. 2312, 115 L.Ed.2d 271, 283 (1991); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), a warden is personally liable only if he is deliberately indifferent

---

[2] Plaintiff's specific evidence pertaining to the nutritional adequacy of the meals being served consists of affidavits, assuming them to be true for summary judgment purposes, establishing that plaintiff (and other inmates at William E. Donaldson Correctional Facility) are not served breakfast meats, nor milk, coffee, "real" fruit juices, or fresh or canned fruit. They also establish that the correct ratio of meat to vegetable servings necessary to maintain a 2500 calories-per-day diet is not met, although there is no evidence that prisoners do not, in fact, receive 2500 calories per day. <u>See</u> Affidavits of Plaintiff, David Wayne Adkins, Alphonso Brown, Bobby Ray Martin, Edward Smith, Jr., and Kenneth L. Westry annexed to plaintiff's response filed October 15, 1996.

6

to that human need. <u>Wilson v. Seiter</u>, <u>supra</u>. Even if an inmate fails to receive a nutritionally adequate diet, the warden is not personally liable if it is caused by mere negligence; to be liable, he must have been deliberately indifferent to the fact that the inmate was not being fed properly.

Further, his deliberate indifference must be the proximate "cause" of both the constitutional violation suffered by the inmate and the injury to the inmate. In <u>LaMarca v. Turner</u>, 995 F.2d 1526, (11th Cir. 1993), cert. denied ___ U.S. ___, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), the Eleventh Circuit reaffirmed that actions for damages under § 1983 require proof of causation just as in any other tort case -- the act or omission of the defendant must be the cause of the constitutional violation <u>and</u> the injury suffered by the plaintiff. <u>See also</u> <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579 (11th Cir. 1995); <u>Novak v. Cobb County Kennestone Hospital Authority</u>, 74 F.3d 1173 (11th Cir. 1996). If a constitutional injury is actually "caused" by some other intervening force or action, the fact that the warden may have been deliberately indifferent to the prisoner's need does not expose him to liability.

In the instant case, the defendant wardens and deputy warden certainly are aware of the diet and menu served plaintiff and other prisoners. The questions, though, revolve around both causation and whether they were or are deliberately indifferent to

7

any inadequacy in the menu. Given the undisputed fact that the actual meals are prepared from a master menu planned by the Food Service Manager at the department level and the reliance of the wardens on the nutritional adequacy of the master menu, it cannot be said that they were deliberately indifferent to alleged inadequacy in the meals. While certainly they knew that the menu did not include milk, coffee, fruit juice, and fresh or canned fruit, they also could reasonably conclude that the menu was nonetheless nutritious and adequate to maintain plaintiff's health. Thus, even if, in fact, the diet provided plaintiff was nutritionally inadequate, the defendants were not deliberately indifferent to that shortcoming. Indeed, based on the fact the meals were prepared from a master menu planned for each institutional kitchen by the DOC Food Service Manager, the wardens had every reason to believe that it was nutritionally adequate.

   Moreover, not only were the defendants not deliberately indifferent to plaintiff's diet, they did not cause any inadequacy in it either by omission or action. Each institutional kitchen received its master menu from the DOC. There is no evidence that individual wardens had either the authority or resources available to alter or improve the menu provided by the state. The diet fed to plaintiff and every other inmate at Donaldson was that dictated by the Food Service Manager at DOC, not these individual wardens. Thus, it was not they who "caused" any nutritional inadequacy in

8

plaintiff's diet; it was not they who could change or improve the diet. The "cause" of any dietary inadequacy was the master menu, not the acts or omissions of these defendants.

    Finally, even if it can be said that defendants caused the plaintiff's diet to be unconstitutionally inadequate and, thereby, violated his Eighth Amendment right to be free from cruel and unusual punishment, they are entitled to summary judgment on the basis of qualified immunity. There is no reported case law, either from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Alabama Supreme Court, that would inform a reasonable prison warden that reliance on a master menu for institutional food service did not adequately assure the nutritiousness of meals served to inmates. A reasonable warden could believe that a master menu from the Food Service Manager of the DOC provided meals with adequate nutritional value even though they did not include milk, coffee, fruit juice, and fresh or canned fruit. Nothing in the case law would tell a reasonable warden that it violated the Eighth Amendment to serve meals without milk, coffee, fruit juice, or fresh or canned fruit from a menu prepared for use by all institutions by the DOC official responsible for prisoner food service. Because the law had not established a "brightline" on this point, defendants are entitled to qualified immunity from damages.

Further, because these defendants are not responsible for the composition or quality of the meals served to inmates, there is no injunctive relief available against them personally (or even in their official capacity) that would remedy an inadequate diet. The remedy would be against the Food Service Manager, an official not sued in this action.

In sum, the court concludes that defendants Harrelson, Hightower, and Cooke, have not violated plaintiff's Eighth Amendment right to a nutritionally adequate diet. But, even if they did, they are entitled to qualified immunity from damages. Injunctive relief against them also would be inappropriate because they are not the official responsible for planning inmate meals, nor are they capable of correcting any inadequacies in them. They are entitled to summary judgment.

### Inadequate Medical Care

As a separate issue, plaintiff also has sued Questcare, Inc., Dr. George Lyrene, and Dr. Richard Cooksey, alleging that they failed to provide him with proper medical treatment relating to back, shoulder, and arm pains, as well as stomach and eating problems. Questcare has not responded to the magistrate judge's order requesting a special report. Drs. Lyrene and Cooksey filed a motion to dismiss the complaint against them on the ground of *res*

*judicata* or collateral estoppel, arguing that this same essential claim was pled and decided in another case, CV-96-N-0318-S.

Actions under § 1983 are subject to rules of claim and issue preclusion taken either from state or federal common law, depending upon what court entered the prior judgment with the allegedly preclusive effect. Compare <u>Migra v. Warren City School District</u>, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (collateral estoppel rules are taken from state law when dealing with preclusive effect of prior state-court judgment) with <u>Johnson v. United States</u>, 576 F.2d 606 (5th Cir. 1978)(estoppel rules are taken from federal common law in federal-question jurisdiction cases when dealing with prior federal-court judgment). Here, the prior judgment in CV-96-N-0318-S clearly was entered by a federal court in prior § 1983 case. Hence, federal common law rules of preclusion apply.

First, it is apparent that no claim against Dr. Cooksey was litigated in the prior action. Indeed, the memorandum opinion in support of the final judgment in the prior case specifically concluded that <u>no</u> claim against Dr. Cooksey was before the court. That court wrote at footnote 1 of its opinion[3]:

---

[3] A copy of the prior judgment and memorandum opinion was annexed to the motions filed by defendants Cooksey and Lyrene. Additionally, a court may take judicial notice of its own orders, records, and files. <u>ITT Rayonier v. United States</u>, 651 F.2d 343, 345 n. 2 (5th Cir., Unit B, 1981); <u>Kinnett Dairies, Inc. v. Farrow</u>, 580 F.2d 1260, 1278 n. 33 (5th Cir. 1978).

11

> In various papers and affidavits filed by plaintiff, he complains about perceived inadequacies in medical treatment provided by Dr. Cooksey. Plaintiff complains that Dr. Cooksey, a former staff physician at William E. Donaldson Correctional Facility, has denied him medical care. However, plaintiff did not name Dr. Cooksey as a defendant in this action. Consequently, there is no claim against Dr. Cooksey in this action.

Plainly, if no claim against Dr. Cooksey was before that court, the final judgment has no preclusive effect in this case. Nothing was litigated or decided about Dr. Cooksey's potential liability in the prior case, so it has no *res judicata* or collateral estoppel impact here insofar as plaintiff now sues Dr. Cooksey, and his motion to dismiss is due to be denied.

The circumstances are different, however, concerning the present claim against Dr. Lyrene. Dr. Lyrene **was** sued in the earlier action, although on a somewhat vague complaint about inadequate medical care. The prior court found the complaint against Dr. Lyrene so vague as to require its dismissal. The court held:

> In his response [to Dr. Lyrene's motion for summary judgment], plaintiff asserts that Dr. Lyrene examined him in 1994 "concerning [a] back injury and pinched nerves in the back and shoulder." However, plaintiff provides no further facts related to this incident. Vague, general, or conclusory allegations are insufficient to merit relief under § 1983. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Importantly, plaintiff does not allege any facts indicating that the

12

>           examination or treatment was inadequate or
>           inappropriate. This claim is due to be dis-
>           missed.

In the instant case, the court concludes that Dr. Lyrene's motion must be deemed to be a motion for summary judgment in that it presents the court with evidentiary materials to be considered in support of the motion. As such, plaintiff must be given an opportunity to respond to the motion and present any evidentiary materials he may be able to muster to show that a genuine issue of fact exists or that Dr. Lyrene is not entitled to judgment as a matter of law.

## Conclusion

In conclusion, the court adopts the report and accepts the recommendation of the magistrate judge as to all claims and defendants, except his recommendation regarding summary judgment in favor of defendants Hightower, Harrelson, and Cooke. For the reasons explained above, the court believes that these defendants also are entitled to summary judgment. Additionally, the court finds that, although Dr. Cooksey's motion to dismiss must be denied, Dr. Lyrene's will be treated as a motion for summary judgment after the plaintiff has had an opportunity to respond to it. By separate order, the court will grant summary judgment to all Department of Corrections defendants. Dr. Cooksey's motion to

13

reasons explained above, the court believes that these defendants also are entitled to summary judgment. Additionally, the court finds that, although Dr. Cooksey's motion to dismiss must be denied, Dr. Lyrene's will be treated as a motion for summary judgment after the plaintiff has had an opportunity to respond to it. By separate order, the court will grant summary judgment to all Department of Corrections defendants. Dr. Cooksey's motion to dismiss will be denied and the claim against him will be referred to the magistrate judge for further proceedings. Dr. Lyrene's motion will be treated as a motion for summary judgment and taken under submission after plaintiff has a reasonable opportunity to respond to it.

DONE this the 18 day of August, 1997.

SAM C. POINTER, JR.
CHIEF JUDGE